**\*\*E-filed 12/23/11 \*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PRAVIN JAIN, et al.,

    Plaintiffs,

v.

WIPRO, INC.,

    Defendant.

No. C 09-2743 RS

**ORDER DENYING MOTION IN LIMINE, AND OVERRULING OBJECTION TO DISCOVERY RULING**

Plaintiffs move *in limine* to exclude any and all testimony at trial, whether live or by deposition, of non-party Ashwin Kedia, and more generally, any evidence regarding prior litigation initiated by Kedia against plaintiff Pravin Jain, among others ("the Kedia Litigation). The motion *in limine* will be denied, without prejudice to objections at trial as to the admissibility of any specific evidence. Separately, the objection of defendant Wipro, Inc. to an order of the assigned magistrate judge quashing certain subpoenas and limiting the scope of Kedia's deposition, which was previously submitted without oral argument, will be overruled.

A. Plaintiffs' motion *in limine*

1. *Ashwin Kedia's personal knowledge*

This action arises from an acquisition of cMango, Inc. by Wipro, Inc., under a written merger agreement, which called for the former shareholders of cMango, most of whom are plaintiffs here, to obtain an additional $12 million in compensation, referred to as "earn-outs," provided

certain events transpired. Ashwin Kedia is also a former shareholder of cMango, but is not a party to this action. Shortly after the merger agreement was announced, and before the transaction closed, Kedia filed the Kedia Litigation, contending that his shares in cMango had been unlawfully diluted. Kedia sought recovery of a larger percentage of the initial compensation paid to cMango shareholders under the merger agreement, plus his share in any earn-outs that might become due. After approximately two years of litigation, that action was settled with a substantial payment to Kedia. There is no dispute that at the time of the settlement, Wipro had paid no earn-outs to any former cMango shareholder; indeed the present case arises because Wipro continues to assert that no earn-outs ever became due.

   Kedia's deposition testimony unequivocally establishes that he lacks any personal knowledge that directly bears on many of the legal and factual issues in this action.

> Q: After you left cMango in August of 2003 did you have any involvement in cMango's operations?
>
> A: None whatsoever.
>
> Q: Did you ever have any firsthand knowledge of whether any of the circumstances that would trigger a right to the earn-outs under the merger agreement occurred?
>
> A: I don't know any. I mean, I had no knowledge of anything going on with the – I have no knowledge of anything going on within Wipro and cMango. I was totally outside.
>
> Q: You were totally outside?
>
> A:Yes. No inside knowledge.
>
> Q:After 2003?
>
> A: That's right.
>
> Q: [After] August of 2003 when you left cMango you didn't have any firsthand knowledge?
>
> A: No.

Notwithstanding this testimony, Wipro contends that Kedia possesses relevant and otherwise admissible personal knowledge on certain relatively specific topics. More generally, Wipro also contends that the substance of the Kedia Litigation is relevant to its equitable defenses. As discussed further below, those contentions have merit, such that there is no basis wholly to exclude Kedia from testifying.

2. *Relevance of the Kedia Litigation*

Plaintiffs' moving papers nominally seek exclusion of any and all evidence related to the Kedia Litigation, a request Wipro faults as being overbroad and vague. Indeed, on reply, plaintiffs clarify that they do not contend that every document with any relationship to the Kedia Litigation must be excluded, or that no mention can be made of the case whatsoever. Accordingly, evidence on certain specific topics described below cannot be barred merely because it arose in the context of the Kedia litigation. Moreover, because evidence regarding the claims made in the Kedia Litigation may be relevant to Wipro's equitable defenses, no order of preclusion will enter at this juncture.

3. *Specified Services Revenue Statements ("SSRS")*

Wipro contends that certain specific documents produced in discovery in the Kedia Litigation, and received by Jain, constituted SSRS within the meaning of that term in the merger agreement, thereby triggering Jain's obligation to object to their contents and/or sufficiency. Plaintiffs admit that Jain received the documents, and are willing to so stipulate. Plaintiffs merely contest that the documents can be deemed to be SSRS or legally equivalent thereto. Although the issue may ultimately come down to a comparison of the documents to the provisions of the merger agreement regarding SSRS, evidence regarding the circumstances under which the documents were produced—such as the wording of discovery requests, and correspondence among counsel regarding the documents—is potentially probative as to whether they should be deemed to be SSRS. Accordingly, any otherwise admissible evidence of that nature will not be excluded merely because it relates generally to the Kedia Litigation. Kedia, however, lacks any relevant personal knowledge,

as his own receipt of the documents and any belief he may personally have held as to whether they constituted SSRS is immaterial.

### 4. *Breach of Section 2.12 of the Merger Agreement*

Wipro argues that Kedia's testimony is relevant to determine whether plaintiffs breached Section 2.12 of the merger agreement by failing to disclose their knowledge of his potential claims, which he subsequently advanced in the Kedia Litigation. Section 2.12 contained plaintiff's representation that, "[a]s of the date of this Agreement, there is no pending Legal Proceeding and no Person has overtly threatened to commence any legal Proceeding . . . ."

Although the Court declined to adjudicate non-dispositive legal issues in the context of the parties' cross-motions for summary judgment, the undisputed record is that as of the date of the merger agreement, Kedia had made no overt threat to sue. Furthermore, plaintiffs notified Wipro when the Kedia Litigation was filed, prior to the closing of the transaction, and Wipro elected to proceed with the closing. Wipro therefore has no tenable claim that plaintiffs breached the express terms of Section 2.12, and any testimony by Kedia on that point would be irrelevant. As set forth below, however, this does not preclude Wipro from pursuing its broader equitable defenses related to the alleged pre-merger conduct of Jain in purportedly diluting Kedia's shares. Any otherwise admissible Kedia testimony on that issue will therefore not be precluded at this juncture.

### 5. *Jain's performance*

Wipro contends that the performance goals necessary to trigger earn-outs were never achieved at least in part because Jain was too absorbed in the Kedia Litigation. While Kedia's deposition testimony establishes that he lacks any relevant information on the subject, Wipro is free to introduce any otherwise admissible evidence it may have as to the alleged inadequacy of Jain's efforts, whether or not related to the Kedia Litigation.

6. *Susman Godfrey's role*

Plaintiffs seek to preclude evidence or argument intended to emphasize that their counsel in this action, Stephen Morrissey and the Susman Godfrey firm, previously represented Kedia in the Kedia Litigation. If correspondence or other evidence revealing Morrissey and Susman Godfrey's role in the Kedia Litigation is otherwise relevant, the fact that it also discloses the prior representation will not necessarily bar its introduction. Specific objections may be raised at trial, however, that particular evidence or argument regarding the prior representation is irrelevant or unduly prejudicial. The parties are also directed to meet and confer to determine to what extent, if any, redactions or omitting counsels' name in testimony might be appropriate to avoid highlighting the prior representation.

7. *Judicial estoppel*

Wipro contends that Jain took the position in the Kedia Litigation that the right to earn-outs had never arisen, and that he should therefore be judicially estopped in this action from advancing a contrary position. It seems unlikely that Wipro will be able to establish the elements of judicial estoppel. For example, contrary to Wipro's insistence, Jain's denial of the complaint in the Kedia Litigation does not appear to constitute an assertion that earn-outs had not or would not become due, but merely that Kedia would not be entitled to an increased share in any such earn-outs as he alleged. More fundamentally, Wipro faces a significant challenge in establishing that the "favorable settlement" Jain allegedly received in the Kedia Litigation would support application of judicial estoppel. Nevertheless, to the extent Kedia can testify to statements made by Jain outside of any mediation proceeding as to whether earn-outs had been earned, such evidence will not be precluded at this juncture, both because it is relevant to a potential judicial estoppel defense, however weak that defense may be, and because it is arguably admissible as an admission in any event.

8. *Equitable estoppel/unclean hands*

Variously characterizing the issue as one of equitable estoppel, unclean hands, and/or breach of the covenant of good faith and fair dealing, Wipro's principal equitable defense is its contention

that plaintiffs should not be permitted to recover further compensation under the merger agreement if, as alleged, Jain deliberately diluted Kedia's shares in cMango prior to the merger, and concealed that fact from both Kedia and Wipro. In colloquial terms, Wipro's theory is that Jain, in effect, stole something from Kedia and then quickly sold it to Wipro before either Kedia or Wipro found out.

Plaintiffs argue that even if such wrongful conduct towards Kedia occurred, it is irrelevant to Wipro's contractual obligation to make earn-out payments under the merger agreement and cannot support either an equitable estoppel or unclean hands defense. Plaintiffs contend that no misrepresentations were made *to Wipro*, and that "what is material is not that the plaintiff's hands are dirty, *but that he dirtied them in acquiring the right he now asserts*." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (emphasis added by plaintiffs). The distinction plaintiffs attempt to draw between conduct directed at Kedia and conduct directed at Wipro is not persuasive. The right plaintiffs "now assert" is a claim for additional compensation from a transaction in which Jain allegedly in effect sold something to Wipro that he had stolen from Kedia. The result was that Wipro almost immediately became embroiled in two years of litigation with Kedia. Whether Wipro ultimately will be able to *prove* the facts necessary to support such a defense is a different question, but the theory cannot be dismissed as untenable at this stage of the proceedings.

Nor is it dispositive that plaintiffs did not breach the express terms of Section 2.12 of the merger agreement. The potential defense lies not in any failure to disclose an existing or overtly threatened lawsuit from Kedia, but in the substance of the allegations underlying the suit he eventually filed.

Conversely, however, the defense does rely on Wipro being able to show that Kedia's claims had merit.[1] As such, proving the equitable defense will require some degree of a "trial within a trial." While the merits of the Kedia Litigation are largely separate from the other issues presented by this litigation, there is some potential overlap with respect to the extent to which Jain allegedly undertook efforts to prevent Kedia—and thereby Wipro—from discovering any wrongdoing that might have prevented the merger from going forward.

---

[1] In contrast, it would have been possible to breach Section 2.12 of the merger agreement by failing to disclose the existence of even a frivolous pending or overtly threatened lawsuit.

6

While the merits of the equitable defense are for the Court, rather than the jury, to decide, no party has sought bifurcation of the trial proceedings and it is not apparent that such bifurcation would be warranted or in the interests of judicial efficiency. Accordingly, evidence going to the merits of the claims presented in the Kedia Litigation will not be precluded at this juncture.

B. <u>Wipro's objections to discovery ruling</u>

The assigned magistrate judge quashed deposition subpoenas directed at various attorneys who served as counsel for the parties in the Kedia Litigation. Wipro has failed to show that this ruling was clearly erroneous, and its objection is therefore overruled.

Asserting that Jain has waived any mediation privilege, Wipro also objects that it should have been permitted to ask questions at Kedia's deposition concerning matters discussed during the course of the mediation proceedings in the Kedia Litigation. Wipro's challenge to this portion of the magistrate judge's ruling is foreclosed by Wipro's express acknowledgement at the discovery hearing that any communications between Kedia and Jain occurring during the mediation were "off the table." See Dkt. No. 63-4 at p. 5. Wipro may not seek through review of the magistrate judge's ruling relief that it did not request from the magistrate judge.

Finally Wipro argues that it should have been permitted to inquire into conversations between Kedia and Jain that took place before or after the mediation itself. The magistrate judge expressly declined to determine in advance, and without the benefit of contextual facts, whether the circumstances and content of any particular conversation would implicate the mediation privilege or not. The parties were instructed "mediation-related communications" would be "off-limits," but the Court explicitly did not define that term, and advised that the ultimate admissibility of any testimony that might be elicited and objected to would be a matter for later resolution. See Dkt. No. 63-4 at p. 7. Wipro has failed to establish any clear error in this ruling, or even that it was thereby constrained from inquiring into at least the foundational issues that would allow for analysis of the applicability of any mediation privilege. Wipro's objections to the magistrate judge's ruling are therefore overruled in their entirety.

1  IT IS SO ORDERED.

3  Dated: December 23, 2011

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California